ZAINEY, J.
AUGUST 12, 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: AIR NEW ORLEANS, INC.                CIVIL ACTION

                                            NO. 04-3241
                                            SECTION "A"(1)

                                            BANKRUPTCY
                                            NO. 88-10161 "A"

## ORDER AND REASONS

Before this Court is a bankruptcy appeal, which was filed by appellant Tony B. Jobe. Appellant contests an order issued by the Bankruptcy Court granting a Motion for Summary Judgment filed by Trustee, Jean O. Turner, and joined by Michael H. Caddell and his law firm, Caddell & Conwell, P.C., who are the appellees herein.  For the reasons that follow, the Order of the bankruptcy court is REVERSED and this matter is REMANDED for further proceedings.

Mr. Jobe also filed a **Motion to Strike Exhibit Not Part of the Record Below, and References and Argument in the Brief of Appellees Michael Caddell and Caddell & Chapman, P.C. which are not Based Upon the Record Below (Rec. Doc. 14)**, which is opposed by appellees.  The  motion is DENIED as moot.

FACTUAL BACKGROUND

On January 14, 1988, Air New Orleans, Inc. (hereinafter "Air New Orleans") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana. In July 1988, the Bankruptcy Court converted Air New Orleans' Chapter 11 reorganization into a Chapter 7 liquidation proceeding and appointed Jean O. Turner as the Interim Trustee (hereinafter "Trustee") for the Estate of Air New Orleans (hereinafter the "Estate"). Once appointed, the Trustee met with Mr. Jobe, who was the largest single shareholder of Air New Orleans, and President, Chief Executive Officer, and Chairman of the Board of the company from 1981 through 1988, to discuss potential claims that the Trustee might pursue.

Subsequently, in January 1990, the Estate filed a lawsuit in the 334th Judicial District of Harris County, Texas against Continental Airlines, Inc. (hereinafter "Continental"), two of Continental's corporate officers, New York Airlines, Inc., and Texas Air Corporation alleging breach of contract, breach of fiduciary duty, civil conspiracy, and deceptive trade practice claims against the defendants (*i.e.*, that defendants engaged in unlawful efforts to drive Air New Orleans out of business). The Bankruptcy Court granted the Trustee authority to hire attorneys Michael H. Caddell and his law firm, Caddell & Conwell, P.C. (collectively referred to as "Caddell") to represent the Trustee and the Estate in pursuit of the claims against the Continental, *et. al.* (hereinafter referred to as the "Texas Litigation").

Ten months later, in December 1990, Caddell entered into a settlement agreement on behalf of the estate with Continental's corporate officers and dismissed them from the litigation. Two months later, Continental filed a voluntary petition for Chapter 11 relief in the United States

District Court for the District of Delaware, which stayed the Texas Litigation proceedings against Continental.  As a result, Caddell became concerned about Continental's financial outlook and refrained from vigorously prosecuting the claims pending the resolution of Continental's bankruptcy proceedings.  Subsequently, in March 1992, Air New Orleans (including its predecessors, successors, and assigns) entered into an agreement with Caddell that relieved him from any further responsibility in prosecuting the Texas Litigation.  Caddell left the Trustee in possession of nearly 400 boxes of discovery material and other work product.

Nearly a year later, the Trustee filed an application in the bankruptcy court to enter into an agreement to partially assign certain rights, title and interests of claims in the Estate to Mr. Jobe, as Mr. Jobe wished to pursue the claims against Continental.  Mr. Jobe agreed to continue the prosecution against Continental by hiring other counsel, arranging payment for all attorney's fees and expenses, and advancing required costs.  In return the Estate was to receive ten percent of the net proceeds of any settlements or judgments in its favor.  The following month, the bankruptcy court approved the application and assignment of interest to Mr. Jobe (hereinafter referred to as the "Assignment Agreement") after a hearing in open court.  The proposed assignment was objected to by Whitney Bank, but the Court overruled those objections noting that "under the facts of this case, this court would rather have ten percent of a chance than ten percent of nothing."  Trial Transcript, p. 9, ll. 21-24, Exhibit 5 to Appellant's Doc. No. 9.  The order decreed in pertinent part:

> IT IS HEREBY ORDERED THAT Jean O. Turner, Trustee herein, be and she is hereby authorized to enter into an agreement to assign any and/or all of the estate's rights, title and interest in and to the following claims:
>
> 1.)   Lawsuit filed in the District Court of Harris County, Texas, 334th Judicial District, bearing Docket No. 90-002021.  Entitled: "Jean O. Turner, Trustee

> in Bankruptcy of The Estate of Air New Orleans, Inc. v. Continental Airlines, Inc., Texas Air Corporation, Francisco A. Lorenzo and Neal F. Meehan,"
>
> 2.) Adversary proceedings filed in the United States Bankruptcy Court for the Eastern District of Louisiana, bearing adversary Nos. 88-0157, 88-0122, and 89-0055, all styled: "Air New Orleans, Inc. v. Continental Airlines, Inc.,"
>
> 3.) All other claims which may exist against other parties arising either directly or indirectly out of the relationship between Air New Orleans, Inc. and the defendants in the Texas Litigation Claims which have not yet been asserted,
>
> to Tony B. Jobe, including without limitation, all proceeds or recovery resulting therefrom, with full right in Jobe to prosecute said assigned claims at his own cost, in his name and/or in the name of the Trustee and Air New Orleans, Inc., and with full discretion in Jobe to prosecute or not prosecute said claims, as he sees fit without the approval of the Trustee, the Bankruptcy Court, or any other creditor or party in interest.

Appellant Doc. 9, April 22, 1993 Order. Pursuant to the Assignment Agreement, Mr. Jobe hired new counsel and continued to prosecute the assigned claims. In July 1993, the Trustee substituted new counsel in the Texas Litigation, which was still pending in the 334th Judicial Texas District Court, and Mr. Jobe hired additional counsel to assist with the prosecution of the Texas Litigation claims. In March 1995, Mr. Jobe, on behalf of himself and as assignee of the claims of the Estate, entered into a settlement agreement with Continental that settled the Texas Litigation (hereinafter referred to as the "Continental Settlement Agreement"). The Estate ultimately received a substantial recovery from Continental, despite Caddell's reservations about pursing the claims against the bankrupt airline.

In the course of pursuing the case against Continental, counsel retained by Mr. Jobe realized there was a potential malpractice claim against Caddell and first advised the Trustee of the potential malpractice claim in June 1994. After attempts to resolve the potential malpractice claim were unsuccessful, Mr. Jobe filed a lawsuit against Caddell in the name of the Trustee and

Air New Orleans in the 280th Judicial District Court of Harris County, Texas.  The petition, which was also amended in July 2002, alleged claims of legal malpractice, fraud, and breach of fiduciary duty to the Estate, among others, which arose out of Caddell's representation of the Trustee and the Estate in the Texas Litigation.  The litigation was ultimately removed to the United States District Court in the Southern District of Houston and stayed pending the lifting of the automatic stay issued in the Air New Orleans bankruptcy proceedings in the Eastern District of Louisiana.

## PROCEDURAL BACKGROUND

In October 2002, the Trustee filed a Complaint for Declaratory Judgment in the bankruptcy proceeding in the Eastern District of Louisiana, seeking a declaration that the Assignment Agreement executed between the Trustee and Mr. Jobe did not transfer the malpractice claims of the Estate against Caddell.  Subsequently, in July 2003, Mr. Jobe filed a Motion for Summary Judgment alleging the undisputed facts and documents demonstrated that the claims of Air New Orleans against Caddell were included in the Assignment Agreement.  The Trustee filed her own Motion for Summary Judgment that alleged the opposite.  Shortly thereafter, Caddell, who was named as a defendant in the Trustee's declaratory action, filed an opposition to Mr. Jobes' motion for summary judgment and joined in the Trustee's Motion for Summary Judgment.

In November 2003, the Honorable Thomas M. Brahney, III, issued a Memorandum Opinion that denied Mr. Jobe's motion for summary judgment and granted the Trustee's motion for summary judgment.  In the opinion, the Bankruptcy Judge held that the Assignment Agreement did not transfer the malpractice claims and, as a result, Mr. Jobe did not have the

authority to file the lawsuit against Caddell on behalf of the Estate.  Mr. Jobe filed a motion for reconsideration, which was granted by the bankruptcy court.  In September 2004, the Bankruptcy Judge issued an Order and Reasons that reinstated the previous order and also assessed damages of nearly $60,000 against Mr. Jobe for his alleged willful violation of the stay.  Mr. Jobe filed a timely notice of appeal and the matter is now before this Court for review.  The primary issue in this appeal is whether the Assignment Agreement transferred the Estate's rights to prosecute the alleged malpractice claims against Caddell to Mr. Jobe.

STANDARD OF REVIEW

Appeals from decisions of bankruptcy courts lie with the district court.  *In re: Moody*, 41 F. 3d 1024 (5th Cir. 1995).  "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses."  *Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992).  A district court, however, must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found.  *Matter of Hammons,* 614 F.2d 399 (5th Cir. 1980).

The District Court reviews a bankruptcy court's grant of summary judgment *de novo*. *Matter of Waterpoint Intercontinental, LLC*, 330 F.2d 339, 342 (5th Cir. 2003).  Furthermore, contract interpretation, including the question of whether the contract is ambiguous, is a legal question, that is also subject to *de novo* review.  *Quorum Health Resources, LLC v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).  Finally, where the material factual issues involve contract interpretation, the court must "look to state law for [the governing] rules." *F.D.I.C. v. Firemen's Ins. Co. of Newark, NJ*, 109 F.3d 1084, 1087 (5th Cir. 1997.)

LAW AND ANALYSIS

The Assignment Agreement at issue in this matter sets forth in its choice of law clause that the agreement "shall be construed and interpreted according to the laws of the State of Texas." As noted by the Fifth Circuit, "[u]nder Texas law, summary judgment may be granted if the terms of a contract are not ambiguous, such that they can be given a certain or definite legal meaning or interpretation." *Petula Associates Ltd. v. Dolco Packing Corp.*, 240 F.3d 499, 502 (5th Cir. 2001) (*citing Coker v. Coker*, 650 S.W.2d. 391, 393 (Tex. 1983)). Texas law requires that a court interpret a contract as a matter of law when it concludes that contract language is not ambiguous. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d. 96, 100 (Tex. 1999).

A term is not ambiguous because of a simple lack of clarity. *Id.* Nor does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term. *Id.* An ambiguity arises only after the application of established rules of construction leave an agreement susceptible to more than one meaning. *Id.* Further, for an ambiguity to exist, both potential meanings must be reasonable. *Id.* Texas rules of contract construction provide that, absent a finding of ambiguity, a court must interpret the meaning and intent of any contract from the four corners of the document without the aid of parole evidence. *Carrabba v. Employers Cas. Co.*, 742 S.W.2d 7009, 716 (Tex. App. Houston 1987).

Mr. Jobe admits in his brief that if the Assignment Agreement is to be construed as transferring Air New Orleans' alleged malpractice claims against Caddell, it would only be through the "other claims" provision:

> All other claims which may exist against other parties arising directly or indirectly out of the relationship between Air New Orleans, Inc. and the defendants in the Texas Litigation Claims which have not yet been asserted.

Mr. Jobe argues that this provision is plainly a catch-all provision designed to encompass any claims not anticipated at the time the Assignment Agreement was executed. Mr. Jobe notes that the language is extremely broad and cites Texas state law construing the terms "arising" and "indirectly" to support his claim that this provision transferred the alleged malpractice claims. Specifically, he asserts that the sentence at issue "encompasses a claim 'having its origin in,' 'growing out of,' or 'having connection with' the relationship between [Air New Orleans] and the defendants in the Texas Litigation, even if such claims are indirectly, that is , 'more or less remotely connected with or growing out of' that relationship." Appellant's Brief, p. 16. (*quoting Jarvis Christian College v. National Fire Insurance Company of Pittsburgh*, 197 F.3d 742, 747 (5th Cir. 1999) and *Accord, Maryland Casualty Co. v. Scharlock*, 31 F. Supp. 931, 933 (S.D. Tex. 1939)).

Caddell, however, argues that the Estate's alleged malpractice claim arose "directly and exclusively" from the attorney-client relationship between Air New Orleans and Caddell. As such, Caddell argues that the alleged malpractice claim could not have arisen indirectly from the relationship between Air New Orleans and the defendants. Caddell's Brief, p. 7. In support of this construction, Caddell cites a Fifth Circuit case that recognized whether an attorney's representation gives rise to a legal malpractice claim is an issue that is "intrinsically personal" to the attorney-client relationship. *In the Matter o f Segerstrom*, 247 F.3d 218, 226 (5th Cir. 2001). Thus, Caddell argues, Mr. Jobe's interpretation must fail since the Estate's alleged malpractice claim against Caddell cannot arise directly and exclusively from one source (*i.e.*, its attorney-client relationship with Caddell), and indirectly from another source (*i.e.*, its relationship with the defendants in the Texas Litigation.) Nonetheless, none of the cases cited by Caddell actually

8

use the term "exclusive" in describing the origin of legal malpractice claims. In fact, in his reply brief, Mr. Jobe notes that Texas courts routinely refer to legal malpractice actions as "arising out of" the previous litigation in which the malpractice allegedly occurred. Appellant's Reply Brief, p. 2. (*citing Greathouse v. McConnell*, 982 S.W.2d 165 (Tex.App.-Hous. 1st Dist. 1998)).

Caddell also argues that Mr. Jobe's interpretation would transfer claims not contemplated by the Trustee. For example, Caddell hypothesizes that Mr. Jobe's expansive interpretation would include the transfer of any claim that Air New Orleans might have against any accountant who performed work related to the Estate. As a result, Caddell asserts that such an interpretation would clearly be overbroad and unreasonable, thus excluding it as a potential meaning under Texas law. This Court disagrees, however, and finds that the language in the clause limited its application by only assigning those claims that arose "directly or indirectly out of the relationship between [Air New Orleans] and the defendants in the Texas Litigation." Quite simply, the Court finds the language in the Acceptance Agreement to be extremely broad–broad enough that it reasonably included the alleged malpractice claim against Caddell.

The Bankruptcy Court disagreed, however, and interpreted the same language (*i.e.*, "directly or indirectly out of the relationship between [Air New Orleans] and the defendants in the Texas Litigation") in a much more limiting manner:

> It is this relationship between [Air New Orleans] and the Texas Defendants that is at the core of the Agreement's construction. The Agreement does not assign future claims against any party sitting outside of this relationship. Mr. Caddell was at no time one of the named defendants in the Texas Litigation, nor is he part of [Air New Orleans]. These facts place him squarely outside of the focal relationship of the Assignment Agreement. Therefore, Mr. Jobe did not have the authority to pursue malpractice proceedings against Mr. Caddell.

B. Ct. No. 37, p. 6.  The Court is not persuaded by the bankruptcy court's interpretation and finds that the claims against Caddell arose indirectly from the relationship between Air New Orleans and Texas Litigation defendants.  The Court notes that the potential malpractice claim against Caddell would not have arisen, but for the Estate's pursuit of the Texas Litigation.

The Trustee also makes much of the fact that at the time the Trustee entered into the agreement with Mr. Jobe "there was absolutely no mention or reference to the assignment or authorization of the assignment of any claims against [Caddell], whether based upon the legal malpractice of [Caddell] or otherwise."  Trustee's Brief, p. 9.  This Court notes, however, that although the parties might not have been aware of the malpractice claims at the time of the Assignment Agreement, there is no dispute that the underlying cause(s) of action had already accrued at that time.  As a result, the Court again finds that the overly broad language of the Assignment Agreement included these claims.

Considering the expansive language contained in the Assignment Agreement, the Court finds that the legal malpractice claim indirectly arose out of the relationship between Air New Orleans, Inc. and the defendants in the Texas Litigation Claims, claims that had not yet been asserted at the time the Assignment Agreement was executed.  As a result, the Court finds Mr. Jobe's interpretation of the agreement entirely reasonable.  Moreover, as this Court has great respect for the decision and rationale of Judge Brahney, it finds that the bankruptcy court's interpretation was also  reasonable.  Accordingly, this Court finds that the "other claims" provision of the Assignment Agreement is susceptible to more than one reasonable meaning and, therefore, that the agreement is ambiguous.  As a result, under Texas law, extrinsic or parole evidence is relevant and admissible to determine the parties' intent and the true meaning of the

agreement. The briefs indicate that there is substantial parole evidence to support Mr. Jobe's interpretation of the agreement.

Under Texas law, if a court finds a contract to be ambiguous, such that parole evidence may be used in interpreting its provisions, construction of the contract becomes a fact issue that cannot be decided on summary judgment. *Coker v. Coker*, 650 S.W.2d. 391, 394 (Tex. 1983).

ACCORDINGLY,

**IT IS ORDERED** that the bankruptcy court's order granting the Trustee's Motion for Summary Judgment is **REVERSED** and this matter is **REMANDED** for a determination by the fact finder as to whether the Assignment Agreement transferred the Estate's rights to prosecute the alleged malpractice claims against Caddell to Mr. Jobe.;

**IT IS FURTHER ORDERED** that Mr. Jobe's **Motion to Strike Exhibit Not Part of the Record Below, and References and Argument in the Brief of Appellees Michael Caddell and Caddell & Chapman, P.C. which are not Based Upon the Record Below (Rec. Doc. 14)**, is **DENIED** as moot.

* * * * * * * *

*[signature: Jay C. Zainey]*